UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  0:12-cv-60931

Fraserside IP LLC, an Iowa Limited Liability Company,

          Plaintiff

vs.

Igor Kovalchuk a/k/a "Vince," d/b/a DrTuber.com;
ERA Technologies Ltd.; Extron Worldwide Corporation;
and JOHN DOES 1-100,

          Defendants

---

## COMPLAINT AND JURY DEMAND

Plaintiff Fraserside IP LLC (hereinafter referred to as "Plaintiff" or "Fraserside") by and through its counsel, for its complaint against Defendants Igor Kovalchuk a/k/a "Vince," d/b/a DrTuber.com, ERA Technologies Ltd., Extron Worldwide Corporation (collectively hereinafter referred to as "Defendants" or "DrTuber"), and JOHN DOES 1-100, based upon federal question and supplementary jurisdiction, for just cause presents the Court with the following Complaint and requests for relief.

## INTRODUCTION

Piracy of copyrighted and trademarked works is a multi-billion dollar, global industry of theft.  The piracy of legal adult entertainment is the training ground for all other forms of online piracy – audio books, television shows, digital music files, and general release Hollywood

movies.  USA Today wrote, "Online porn often leads high-tech way"[1] and it is a fact that pornography lead the technological advances and mass acceptance of VHS, DVD's, the growth of the Internet, streaming video, online advertising, online payment processing, and downloads. Online piracy of pornography has lead the way for piracy of more mainstream copyrighted works; it has provided a roadmap at a significant cost to the legitimate and legal adult and mainstream entertainment industries.

The pirates of pornography train like professional sports players before a big game; they are masterful at their craft and execute with precision.  They diligently find ways to hide assets and identities while exploiting weaknesses in their prey.  Piracy such as that committed by Defendants is committed only for profit; no party engages in piracy out of any feeling of philanthropic responsibility or to further constitutional free expression.  The Rand Institute's 2009 publication Film, Piracy, Organized Crime, and Terrorism determined that "Piracy is high in payoff – with profit margins greater than those of illegal narcotics – and low in risk often taking place under the radar of law enforcement.  In addition, terrorist groups have in some cases used the proceeds of film piracy to finance their activities.  Besides being a threat to the global information economy, counterfeiting threatens public safety and national security."[2]

In May 2011, Assistant Attorney General Lanny A. Breuer of the Criminal Division during a speech to the International Anti-Counterfeiting Coalition Spring Conference said,

---

[1] Available at http://www.usatoday.com/money/industries/technology/2004-03-09-onlineporn_x.htm (last visited Apr. 11, 2012).
[2] Available at http://www.rand.org/pubs/monographs/2009/RAND_MG742.pdf (last visited Apr. 11, 2012).

"[Intellectual Property] IP Crime is a serious threat.  It jeopardizes the health and safety of consumers.  It stifles creativity.  And it has a negative effect on the American economy.[3]

Piracy is not a victimless crime and piracy of legal adult materials leads to greater occurrences of piracy across all other forms of online intellectual property.  It is against this backdrop that the following Complaint is respectfully submitted to the Court.

<u>JURISDICTION AND VENUE</u>

1.      Plaintiff is a Limited Liability Company organized under the laws of the State of Iowa with its principal place of business in Northwood, Iowa.

2.      Upon information and belief, Defendant Igor Kovalchuk owns and operates www.drtuber.com, using a shell corporation and business address of ERA Technologies Ltd., RG Hodge Plaza Wickhams Cay Road Town, Tortola, British Virgin Islands.

3.      Upon information and belief, Defendant Igor Kovalchuk owns and operates www.drtuber.com, using a shell corporation called Extron Worldwide Corporation, which is incorporated in Panama.

4.      The Court has personal jurisdiction in this matter pursuant to *Fla. Stat.* § 48.193, because Defendants have operated, conducted or engaged in, or carried on a business or business venture in this state.

---

[3] FBI Counterintelligence Strategic Partnership Newsletter, Page 3, available at http://www.ndiastl.org/wp-content/uploads/2011/07/Newsletter-July.pdf (last visited Apr. 11, 2012)

5.      DrTuber has, at all times relevant to the claims set forth herein, operated within this state an adult-oriented internet entertainment company, internet feeder websites and internet websites available on a monthly subscription fee basis, much of the video content for those websites has been stolen from Plaintiff with the assistance of one or more of John Does 1-100 (collectively, the "Doe Defendants") acting as agents for DrTuber.

6.      Upon information and belief, one or more of the Doe Defendants reside within this Judicial District.

7.      DrTuber has a registered DMCA agent located at 1451 W Cyprus Creek Road Suite 300, Fort Lauderdale, FL 33309.

8.      As set forth in further detail below, to collect the proceeds of its copyright infringement enterprise, DrTuber utilizes a third-party payment processor located at 3111 N. University Drive, Suite 1000, Coral Springs, FL 33065.  [See Attachment 10 SegPay Contact Page].

9.      At the time of documentation of infringements, the <DrTuber.com> domain name was held by Defendants through a registrar located at 20 SW 27th Avenue, Suite 201, Pompano Beach, FL 33069.  [See Attachment 3 Whois Record for DrTuber.com].

10.     This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 17 U.S.C. § 101 et seq., Section 32 of the Lanham Act, 15 U.S.C. §1114(1), 15 U.S.C. § 1121, 15 U.S.C. §1125, 28 U.S.C. §1331 and 28 U.S.C. §1338.

11.     Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) and/or (c).

12.     This Court has personal jurisdiction pursuant to 28 U.S.C. §§ 1391(b), (c) and/or (d) and 28 U.S.C. § 1400(a).

<u>PARTIES</u>

1.     Fraserside IP LLC, an Iowa Limited Liability Company, is the rightful trademark, copyright, and intellectual property owner and/or successor in interest of the United States trademarks, copyrights, and intellectual property that is the basis for this action.  The parent company Private Media Group Inc., a Nevada company, is one of the world's leading producers of high quality brand driven adult motion picture films.  Fraserside, commonly and commercially known as "Private", as successor in interest, has been producing legal adult entertainment since 1968, from print magazines and movie reels to VHS to DVD to online digital download and streaming.

2.     Fraserside's highly sought after intellectual property is distributed on a wide range of platforms including mobile handsets via 104 network operators in 45 countries, digital TV via 38 platforms in 24 countries, broadband Internet, television broadcasting including its own South American cable channel in a venture with world-famous Playboy and sold on DVD's, on demand and through subscription based web properties.

3.     Fraserside has protected its trade names such as PRIVATE, PRIVATE GOLD, PIRATE and THE PRIVATE LIFE OF through United States trademark and service mark registrations and its films through United States copyright registration.  Beginning in 1975, Fraserside further protected its intellectual property through registration in more than 25 countries including Australia, Brazil, Canada, Chile, Denmark, Europe, France, Germany, Hong Kong, India, Italy, Japan, Mexico, Norway, New Zealand, Panama, Philippines, Poland, South Africa, Spain, Sweden, Switzerland, Taiwan, Thailand, United Kingdom, and Venezuela.

4.      Plaintiffs, either directly or as successor in interest, are producers, distributors, and/or exclusive licensors of motion pictures in the United States.  Plaintiffs are engaged in the business of producing, distributing, and/or licensing to others, the rights to copy, distribute, transmit and exhibit copyrighted motion pictures and/or other audio visual works.  Plaintiffs expend significant amounts of time, money and other resources to produce high quality products, develop supply chains and distribution systems, and build premium brand recognition of their products.

5.      Plaintiffs, either directly or through their affiliates or licensees, distribute their copyrighted works in various forms, without limitation, over the Internet, pay-per-view, video on demand, digital video discs (DVD's), and other formats, by selling them directly or indirectly to the home viewing market or licensing others to do so.  Plaintiffs also distribute their copyrighted works, without limitation, through Internet streaming and download services.

6.      Plaintiffs have registered with the United States Copyright Office their copyrighted works identified in the paragraphs below.  Plaintiffs have taken industry standard steps to identify their products, including placing recorded warnings at the beginning and end of video productions that appear whenever those videos are played.

13.      The production of pornography is one of the most scrutinized and policed legal enterprises in the country, where state, local and federal regulations all require "the purveyors of porn" to comply with a myriad of laws and record keeping schemes.  Producers navigate the various legal requirements at great expense in order to remain compliant, carefully building government-required databases that must be maintained for inspection even beyond the life of the company.  Cybernet has meticulously complied with the various laws, rules, and regulations imposed upon production of legitimate adult entertainment and set a high bar for ethical conduct,

including pre- and post- interviews with actors or actresses showing willing if not enthusiastic participation in the production of its videos.  Legitimate producers do not "make" anyone do anything – only consenting adults participate, and the final product is only sold to consenting adults through age-restricted channels.  Both men and women participate in front of and behind the camera at jobs that require real skill and dedication.  As the "mainstream" actor James Franco pointed out "I got a video camera and my girlfriend and I decided to film ourselves.  We watched it back and said, 'Yeah, let's never do that again.'  Those people in pornos, they are great performers.  They're not just doing it, they're selling it to an audience."  Huffington Post August 10, 2011 "James Franco Documentary: Disappointing Sex Tape Inspires Film on Kink.com"    available    at    http://www.huffingtonpost.com/2011/08/10/james-franco-porn-documentary_n_923962.html (last visited Ap. 11, 2012).

7.     Plaintiff's PRIVATE trademark and service mark have been continuously used in commerce since at least June 1968.  U.S. Trademark Registration No. 1014975 was registered on July 1, 1975 and renewed on September 6, 2005.

8.     Plaintiff has expended considerable effort and expense in promoting its trademark and the goods sold under the trademark PRIVATE.  As a result, the purchasing public has come to know, rely upon and recognize the mark PRIVATE as an international brand of high quality entertainment.

14.     Plaintiff's PRIVATE GOLD trademark and service mark have been continuously used in commerce since at least August 2004.  U.S. Trademark Registration No. 3188677 was registered on December 26, 2006.

15.     Plaintiff has expended considerable effort and expense in promoting its trademark and the goods sold under the trademark PRIVATE GOLD.  As a result, the purchasing public has

come to know, rely upon and recognize the mark PRIVATE GOLD as an international brand of high quality adult entertainment.

16.  Plaintiff's PRIVATE trademark and service mark design of two human female figures have been continuously used in commerce since at least December 2004.  U.S. Trademark Registration No. 3389749 was registered on May 26, 2008.

17.  Plaintiff has expended considerable effort and expense in promoting its trademark and the goods sold under the trademark service mark design of two human female figures.  As a result, the purchasing public has come to know, rely upon and recognize the mark design of two human female figures as identifying Plaintiff's work, an international brand of high quality adult entertainment.

18.  Plaintiff's PIRATE trademark and service mark have been continuously used in commerce since at least May 24, 2000.  U.S. Trademark Registration No. 3137445 was registered on September 5, 2006.

19.  Plaintiff has expended considerable effort and expense in promoting its trademark and the goods sold under the trademark service mark PIRATE.  As a result, the purchasing public has come to know, rely upon and recognize the mark PIRATE as an international brand of high quality adult entertainment.

20.  Plaintiff's THE PRIVATE LIFE OF trademark and service mark have been continuously used in commerce since at least September 1999.  U.S. Trademark Registration No. 2875138 was registered on August 17, 2004.

21.     Plaintiff has expended considerable effort and expense in promoting its trademark and the goods sold under the trademark THE PRIVATE LIFE OF.  As a result, the purchasing public has come to know, rely upon and recognize the mark THE PRIVATE LIFE OF as an international brand of high quality adult entertainment.

22.     Plaintiff has produced in excess of 1,000 full-length adults-only or adult-oriented audio-visual works and holds over 75 United States copyrights for its works.

23.     Upon information and belief, Defendant Igor Kovalchuk utilizes a shell corporation known as ERA Technologies Ltd., which has a business address of RG Hodge Plaza Wickhams Cay Road Town Tortola, Virgin Islands.  ERA Technologies Ltd. is an alter ego of Kovalchuk, dominated by Kovalchuk, used to evade liability due to illegal copyright infringement.  Evidence to pierce the corporate veil will be offered following discovery.

24.     Upon information and belief, Defendant Igor Kovalchuk also utilizes another shell corporation known as Extron Worldwide Corporation, which has a business address of Torres de las Americas, Tower B, No. 305, Punta Pacifica, Panama.  Extron Worldwide Corporation is an alter ego of Kovalchuk, dominated by Kovalchuk, used to evade liability due to illegal copyright infringement.  Evidence to pierce the corporate veil will be offered following discovery.

25.     Upon information and belief, Defendants do business as DrTuber.com and operate the website DrTuber.com.

26.     Defendants compete against Plaintiff in the distribution and sale of adults-only audio-visual works through Internet distribution.

27.     DrTuber lists Constantin Luchian, at 1451 W. Cyprus Creek Road, Suite 300, Fort Lauderdale, FL 33309 as its authorized DMCA agent in September, 2011. Defendants therefore have an agent in this Judicial District and are subject to the jurisdiction of this Court.

28.     The true names and capacities, whether individual, corporate, associate or otherwise, of the Doe Defendants are unknown to Plaintiff, who therefore sues the Doe Defendants by fictitious name.  Plaintiff intends to amend its Complaint to substitute the names of Doe Defendants as each is revealed through discovery.

29.     Upon information and belief, Plaintiff avers that each defendant, individually, corporately, jointly and/or severally, acted intentionally, knowingly, negligently or through willful blindness, as an agent, or representative of each and every, all and singular, other defendant, and acted to further the ends of the illegal and improper purposes alleged herein in a common course or scheme to infringe on the Plaintiff's copyrighted intellectual property for illegal profit and monetary gain.

STATEMENT OF FACTS

30.     Upon information and belief, DrTuber.com is a website that provides adult-oriented audio-visual content to the general public without request for age-verification.

31.     Upon information and belief, the DrTuber.com website is visited by over 5 million internet surfers per month. [See Attachment 1 Compete.com results with estimates and public details]. Upon information and belief, Alexa, a website rating service, ranks DrTuber.com as the #319 most visited website in the world.   [See Attachment 2 Alexa Ranking].   For comparison purposes only, Google.com and Facebook.com are ranked 1st and 2nd, respectively. On March 26, 2012, sites with more traffic than DrTuber.com per Alexa include Washington

Post at #283, Groupon.com # 297, United States Postal Service at # 300 and Target.com at # 308. Websites that have less traffic than Defendants' website include such widely known entities as American Express.com (334) and USAToday.com (361). Defendants' website, DrTuber.com, is arguably one of the most visited websites in the world. These enormous numbers of visitors result in Plaintiff's copyrighted works being viewed thousands or even hundreds of thousands of times on Defendants' website. Defendants proudly display the number of instances in which a particular piece of media has been played on its website as number of "views". One video has been viewed over 4,868,766 times!

32.     Copyright law states that any material that is "reproduced, performed, publicly displayed, or made into a derivative work without permission" is an illegal violation of the rights of the copyright owner. By its definition each view constitutes a separate and distinct instance of infringement that is produced on a viewer's computer. Plaintiff's intellectual property has been viewed over TEN MILLION (10,000,000) times, available for months and for some videos, years, on Defendants' website. With the enormous amount of internet users on Defendants' website, the number of uncompensated views grows daily thus furthering the number of copyright infringements and contributing to the further dilution of the Plaintiff's trade and service marks.

33.     Upon information and belief, Defendants pay third parties to send web users, also known as traffic, to Defendants' website. Defendants currently pay third parties between $1.25 and $1.75 USD for every one thousand (1,000) unique visitors from the United States that are sent to Defendants' website.

34.    Upon information and belief, Defendants allow third parties to display Plaintiff's intellectual property to third parties on third party websites for the purpose of driving traffic back to DrTuber.  DrTuber has enabled this feature by providing an "embed code" for every video on its site.  An internet user can copy and paste the embed code on another website where the video can then be viewed.  The number of views displayed on DrTuber does not reflect the number of views on those sites.  This significantly increases the number of views.  This number grows daily thus furthering the number of copyright infringements and contributing to the further dilution of the Plaintiff's trade and service marks.

35.    Upon information and belief, a large portion of videos available on the websites appear to be copyrighted videos that, upon information and belief, are not owned by Defendants but are owned by well-known and long-established members of the adult –oriented audio -visual entertainment industry.

36.    Upon information and belief, Defendants do not qualify for safe harbor protection under the Digital Millennium Copyright Act (DMCA).  Although Defendants registered a DMCA Agent in September 2011, Defendants do not meet all requirements for safe harbor.

37.    Plaintiff owns the worldwide rights to its extensive archive of high-quality content and also licenses its trademarks internationally for a select range of luxury consumer products.

38.    Plaintiff, as successor in interest, has dedicated significant resources to create, distribute, and protect its works.  In addition, Plaintiff dedicates resources to be in compliance with applicable laws in order to protect the integrity of their works and the overall adult entertainment industry.

39.     The viability and profitability of Plaintiff is based upon monies and revenue earned from Plaintiff's intellectual property, including copyrights in Plaintiff's films.

40.     The Internet, in conjunction with recent significant advances in technology, hardware and software, has resulted in the availability of effective means for circumventing the intellectual property ownership rights in nearly every industry, including adult entertainment. The pervasive and intense online infringement is nearly crippling the adult entertainment industry, providing unfettered, unregulated, free access to copyrighted works originally produced by reputable businesses and persons.

41.     Upon information and belief, these infringers are without any accountability to governmental requirements or regulations, without any actual investment in the creation of the works, and without any commitment to the vision of the future of the industry.  Nonetheless, these infringers utilize, display, and distribute copyrighted works for which they have no right or proper license for their own commercial and significant financial benefit.  These actions have caused and continue to cause significant damage to the business and reputation of the true copyright owners.

42.     Upon information and belief, infringers, such as Defendants through the website DrTuber.com, have taken advantage of the existence of legitimate Web sites that properly facilitate the exchange of user-generated content.  Defendant DrTuber is truly a subscription membership web site hiding behind the veneer of a simple user-generated content exchange site. Defendant DrTuber sells premium memberships to its website and pays third parties to send traffic to its websites like a membership website.  [See Attachment 9 DrTuber Join Form].

43.     Defendants enjoy direct financial benefits from unauthorized display of Plaintiff's copyrighted content, which deprives Defendants of any safe harbor defenses under the Digital Millennium Copyright Act.  Defendants' DrTuber.com website is designed for the sole purpose of taking commercial advantage of copyrighted works without any authority whatsoever and derive benefit from the copyrighted works.  This significant commercial and financial advantage is obtained without purchasing or licensing any rights from the copyright holder nor incurring the significant expense of creating and generating the content itself.  [See Attachments 5 and 9].

44.     Upon information and belief, Defendants' business model of using unauthorized works without compensation to the works' legitimate owners has significantly contributed to the ability of Defendants to become one of the most visited websites in the world.  Defendants offer unauthorized content for free that legitimate competitors must pay for, with extraordinary results.  Defendants then sell premium access to users attracted by the unauthorized content with more extraordinary results.  An illegitimate business model based on unauthorized use of competitors' goods, at zero out-of-pocket cost to Defendants, will be able to drive out legitimate competitors, undermining the very heart of the Constitutional basis for copyright protection.

45.     Upon information and belief, Defendants have created, owns, and/or operates the Internet Web site www.DrTuber.com.  In concert with the Doe Defendants, DrTuber uses this site to display and distribute Plaintiff's films, among others, to Internet Users.   Defendant DrTuber and the Doe Defendants each know, or have reason to know, that there is no proper license or authority to display and distribute Plaintiff's films on Defendants' website and no proper license or authority to or obtain commercial financial gain from such display and distribution.

46.     Defendants use the website DrTuber to gather a vast and extensive collection of infringed films to display and distribute. The website is a one-stop shop for infringing material. Most, if not a very large portion, of the content indexed on or available on the website is infringing, unauthorized copyrighted content, including Plaintiff's copyrighted works.   The fundamental purpose of the website is to capitalize on the illegal dissemination and contribute to the illegal dissemination of infringing works. This display and distribution provides Defendant DrTuber with significant monthly revenues, and hinders Plaintiff's rightful ability to derive financial benefits from their own films.

47.     Upon information and belief, the display and distribution of Plaintiff's films are accompanied by advertisements that generate Defendant DrTuber significant annual revenue. Advertisers purchase ad space on certain pages and in certain locations on DrTuber.com due to the known or estimated Internet traffic that views the particular page or location.  The volume of Internet traffic on such page or location is directly attributable to the quality of content displayed and distributed.   Thus, the quality of Plaintiff's films is directly responsible for the revenue generated by the sale of ad space on Defendants' website.

48.     Upon information and belief, the commercial financial benefit and deception regarding the purpose of Defendants' website is not limited to the large revenues generated through sale of third party advertising space.  As opposed to legitimate user generated content exchange sites, Defendants' website induces the Internet user to pay subscription fees.

49.     Upon information and belief, DrTuber does not initially allow users to view high quality versions of Plaintiff's films or download Plaintiff's film to the user's computer, although a user may view the films by lower quality streaming.  If the Internet user wishes to view the

film in High Definition, or download the video, the user is presented with the option of becoming a Premium Member.  The website user is presented with a one (1) month Premium Membership for $29.95 that renews every 30 days until cancelled.

50.     Upon information and belief, DrTuber uses the services of a Florida-based payment processor, SegPay, to collect credit and debit card payments from users who sign up for a premium membership.  [See Attachment 9 DrTuber Join Form and Attachment 10 SegPay Contact Page].

51.     Upon information and belief, this Paid Premium Membership entices the website user to view Plaintiff's works in HD, download the unauthorized and uncompensated copyrighted work belonging to Plaintiff, receive 24/7 customer support, increase download speeds, and interact with other paid subscribers; all allowing Defendants to directly commercially benefit from Plaintiff's work without any benefit to Plaintiff.

52.     Upon information and belief, the Internet user, initially lead to believe that Defendants' website is a completely free viewing site, is presented with paid options to enhance the viewing experience of unauthorized works owned by Plaintiff.  The user is permitted to download the films only with further financial benefit to Defendants.  Defendants give away unauthorized viewing of Plaintiff's property then entice potential consumers with unauthorized copies of Plaintiff's property without any benefit to Plaintiff.

53.     Upon information and belief, Plaintiff's copyrighted works have been and continue to be infringed by Defendants and the Doe Defendants through the reproduction, distribution, and public display of Plaintiff's films by and through the Internet Web site

DrTuber.com for which Defendants own the domain registrations and to which Defendants and the Doe Defendants, stakeholders of the site, provide essential equipment and support.

54.     Upon information and belief, the high volume of Internet traffic generated at Defendants' website is due to the option Internet users are presented in viewing the infringed content for free, rather than obtaining the viewing rights legally and knowingly paying for such rights.

55.     On or about June 2011, an initial search of Defendants' website revealed and documented over 32 separate instances of copyright infringement of Plaintiff's copyrighted and trademarked intellectual property.  As of the date of this Complaint, a total of 32 instances of infringement, identified by name and registration number in the following paragraphs, were documented as being displayed and distributed on DrTuber.com.  Each of these films were displayed and distributed by Defendants and the Doe Defendants, each individually and acting in concert with each other, without the consent of, or licensing by, Fraserside, the copyright owner and registrant of the motion picture.

56.     Plaintiff marks each film with a copyright notice and trademark in order to inform the public of Plaintiff's ownership.  Upon information and belief Defendants have altered Plaintiff's films in that these notices and marks have been removed or obscured.  Defendants intentionally delete, blur or obscure Plaintiff's watermarks and logos from Plaintiff's videos displayed on Defendants' website, causing consumers to be confused as to the origin of the audio-video content.  The manipulation of identifying marks is also evidence of knowledge and intent to infringe Plaintiff's intellectual property rights.

57.     Upon information and belief, Defendants have actual knowledge and clear notice of this extensive infringement of Plaintiff's titles or else is willfully blind to the rampant infringement.  The infringement is clear and obvious even to the most naïve observer.  Plaintiff's films are indexed, displayed and distributed on DrTuber through Defendants and the Doe Defendants acting in concert.  Plaintiff's and other major producers' trademarks are used to index infringing material along with obfuscation of watermarks and other identifiers which is evidence of knowledge and intent.

58.     By virtue of the conduct alleged herein, Defendants knowingly promote, participate in, facilitate, assist, enable, materially contribute to, encourage, and induce copyright and trademark infringement, and thereby have infringed, secondarily infringed, and induced infringement by others, the copyrights and trademarks in Plaintiff's copyrighted work, including but not limited to those listed in the paragraphs below.

59.     Plaintiffs have incurred attorneys' fee and other costs in this action.

60.     All conditions precedent to the maintenance of this action have occurred, have been performed, or have otherwise been satisfied.

## CLAIMS FOR RELIEF

### COUNT I

#### Copyright Infringement

61.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work A TASTE OF PLEASURE, Copyright Registration Number PA0001674267, also protected by Trademark Registration 1014975; specifically located at

http://www.drtuber.com/video/2270. This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture.

62.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work ANAL LOLITAS, Copyright Registration Number PA0001670894, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/8750/anal-lolas. This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 2,017 times on Defendants' website at the time Plaintiff documented the infringement.

63.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work ANAL LOLITAS, Copyright Registration Number PA0001670894, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/96395/nasty-slut-gabriella-marceau-wakes-naked-guy-up-and-asks-him-to-fuck-her-and-her-gf. This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 2,595 times on Defendants' website at the time Plaintiff documented the infringement.

64.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work BEAUTIES IN THE TROPIX, Copyright Registration Number PA0001674265, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/99722/big-boobied-females-are-going-crazy-over-hard-summer-cocks

This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 4,089 times on Defendants' website at the time Plaintiff documented the infringement.

9.      In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work CLEOPATRA, Copyright Registration Number PA0001676455, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/85760. This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 11,320 times on Defendants' website at the time Plaintiff documented the infringement.

65.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work CLEOPATRA, Copyright Registration Number PA0001676455, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/27054/rita-faltoyano-hot-sex. This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 4,224 times on Defendants' website at the time Plaintiff documented the infringement.

66.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work DANGEROUS CURVES, Copyright Registration Number PA0001675596, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/23082/young-n-hot-jane-darling-making-wine.   This copyrighted and

trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 4,224 times on Defendants' website at the time Plaintiff documented the infringement.

67.    In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work DANGEROUS THINGS, Copyright Registration Number PA0001675595, also protected by Trademark Registration 1014975; specifically located at http://www.drtuber.com/video/11154/private-classics-5-dangerous-things-2000-scene-8-maria-bellucci. This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 5,879 times on Defendants' website at the time Plaintiff documented the infringement.

68.    In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work DANGEROUS THINGS, Copyright Registration Number PA0001001601, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/137435/silvia-saint-is-in-a-wild-threesome-with-two-hard-cocks-poking-her. This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 1,433 times on Defendants' website at the time Plaintiff documented the infringement.

69.    In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work DANGEROUS SEX, also protected by Trademark Registration 1014975;

he

specifically located at http://drtuber.com/video/38603/sharka-blue-and-katy-caro-3some-boating-flvarchive.  This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture.   According to Defendants' website, this video has been viewed 2,154 times on Defendants' website at the time Plaintiff documented the infringement.

70.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work DOMINATRIX CHESS GAMBIT, Copyright Registration Number PA0001670899, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/32984/michelle-wild-and-alma.    This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 2,300 times on Defendants' website at the time Plaintiff documented the infringement.

71.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work FATAL ORCHID 2, Copyright Registration Number PA0001675598, also protected    by    Trademark    Registration    1014975;    specifically    located    at http://www.drtuber.com/video/17418.   This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 4,868,766 times on Defendants' website at the time Plaintiff documented the infringement.

72.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work FATAL ORCHID 2, Copyright Registration Number PA0001675598, also protected by Trademark Registration 1014975; specifically located at http://www.drtuber.com/video/17378. This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 3,035,984 times on Defendants' website at the time Plaintiff documented the infringement.

73.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work GIRLS OF DESIRE, Copyright Registration Number PA0001670895, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/107109/lesbo-lovers-get-to-ride-a-cock-not-only-on-the-floor-and-the-stool-but-also-on-the-grand-piano. This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture.

74.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work GIRLS OF DESIRE, Copyright Registration Number PA0001670895, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/49759/michelle-wild-carmen-white-the-perfect-duo.   This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 9,641 times on Defendants' website at the time Plaintiff documented the infringement.

75.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work GIRLS OF DESIRE, Copyright Registration Number PA0001670895, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/45743/sexy-sophie-moon-fucked-and-jizzed.   This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture.  According to Defendants' website, this video has been viewed 5,530 times on Defendants' website at the time Plaintiff documented the infringement.

76.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work IBIZA SEX PARTY 5, Copyright Registration Number PA0001674244, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/40953/fuck-them-all.  This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture.  According to Defendants' website, this video has been viewed 6,783 times on Defendants' website at the time Plaintiff documented the infringement.

77.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work MATADOR 4, Copyright Registration Number PA0000990707, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/107346/these-chicks-love-heading-outdoors-for-some-sucking-and-fucking.  This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion

picture. According to Defendants' website, this video has been viewed 176 times on Defendants' website at the time Plaintiff documented the infringement.

78.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work MATADOR 5 – SEX TRIP, Copyright Registration Number PA0001003434, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/121815/monica-sweetheart-gives-blowjob-and-takes-two-hard-cocks-in-her-holes.  This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 1,103 times on Defendants' website at the time Plaintiff documented the infringement.

79.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work PARADISE ISLAND, Copyright Registration Number PA0001677513, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/97189.  This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture.

80.     In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work PORNOLYMPICS, Copyright Registration Number PA0001670614, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/85693?aid=24.  This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and

trademark owner of the motion picture.  According to Defendants' website, this video has been viewed 11,075 times on Defendants' website at the time Plaintiff documented the infringement.

81.    In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work PORNOLYMPICS, Copyright Registration Number PA0001670614, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/67319/black-angelica-in-an-anal-sextet. This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 5,162 times on Defendants' website at the time Plaintiff documented the infringement.

82.    In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work PORNOLYMPICS, Copyright Registration Number PA0001670614, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/93144/excellent-fuck-with-horny-luscious-babes-in-wonderful-paradise. This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 3,270 times on Defendants' website at the time Plaintiff documented the infringement.

83.    In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work PORNOLYMPICS, Copyright Registration Number PA0001670614, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/131741/coed-orgy-and-gangbanging-on-the-beach-with-palms.    This

copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 2,524 times on Defendants' website at the time Plaintiff documented the infringement.

84.    In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work PRIVATE GOLD 5 – CAPE TOWN, Copyright Registration Number PA000926228 also protected by Trademark Registration 1014975; specifically located at http://www.drtuber.com/video/17626.   This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture.  According to Defendants' website, this video has been viewed 3,864,520 times on Defendants' website at the time Plaintiff documented the infringement.

85.    In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work PRIVATE STORY OF BOBBI EDEN, Copyright Registration Number PA0001674274, also protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/24513/bobbi-eden-explodes.  This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture.  According to Defendants' website, this video has been viewed 416 times on Defendants' website at the time Plaintiff documented the infringement.

86.    In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work PSYCHOPORN, Copyright Registration Number PA0001670904, also

protected by Trademark Registration 1014975; specifically located at http://drtuber.com/video/32984/michelle-wild-and-alma. This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 2,300 times on Defendants' website at the time Plaintiff documented the infringement.

87. In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work SPREAD MY LIPS, Copyright Registration Number PA0001670902, also protected by Trademark Registration 1014975; specifically located at http://www.drtuber.com/video/12130. This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 3,833 times on Defendants' website at the time Plaintiff documented the infringement.

88. In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work TROPICAL HEAT, Copyright Registration Number PA0001677518 also protected by Trademark Registration 1014975; specifically located at http://www.drtuber.com/video/69865?aid=24. This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture.

89. In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work TROPICAL TWINS, Copyright Registration Number PA0001670893, also protected by Trademark Registration 1014975; specifically located at

http://drtuber.com/video/96671/excellent-home-video-with-horny-company-of-three-tempted-guys.   This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 2,665 times on Defendants' website at the time Plaintiff documented the infringement.

90.    In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work XXX CHAIN REACTION, Copyright Registration Number PA0001674566, also   protected   by   Trademark   Registration   1014975;   specifically   located   at http://drtuber.com/video/136694/ellen-saint-and-kathy-anderson-take-on-multiple-cocks-to-fuck. This copyrighted and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 1,443 times on Defendants' website at the time Plaintiff documented the infringement.

91.    In August 2011, www.drtuber.com displayed and offered for viewing Fraserside's copyrighted work TRIPLE X No. 5, Copyright Registration Number PA0000792722, also protected   by   Trademark   Registration   1014975;   specifically   located   at http://drtuber.com/video/102918/private-classics-triple-x-05-pt2.    This  copyrighted  and trademark protected work was displayed without the consent of, or licensing by, Fraserside IP LLC, the copyright owner and trademark owner of the motion picture. According to Defendants' website, this video has been viewed 1,194 times on Defendants' website at the time Plaintiff documented the infringement.

92.     The foregoing constitutes reproduction, distribution, public performance, public display and/or preparation of derivatives of Fraserside's copyrighted works by DrTuber.

93.     DrTuber's reproduction, distribution, public performance, public display and/or preparation of derivatives of Fraserside's copyrighted works, as alleged herein, have been done without Plaintiff's permission.

94.     DrTuber's reproduction, distribution, public performance, public display and/or preparation of derivatives of Fraserside's copyrighted works, as alleged herein, have not been done for purposes of criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research.

95.     DrTuber's reproduction, distribution, public performance, public display and/or preparation of derivatives of Fraserside's copyrighted works, as alleged herein, constitute a violation of Plaintiff's exclusive rights, as set forth in 17 U.S.C. § 106.

96.     DrTuber's conduct was willful within the meaning of 17 U.S.C. § 101, et seq.  At a minimum, DrTuber acted with willful blindness and reckless disregard of Plaintiff's registered copyrights.

97.     Because of their wrongful conduct, DrTuber is liable to Plaintiff for copyright infringement.  *See* 17 U.S.C. § 501.  Plaintiff suffers and will continue to suffer substantial losses, including, but not limited to, damage to its business reputation and goodwill.

98.     The law permits Plaintiff to recover damages, including readily ascertainable direct losses and all profits DrTuber made by its wrongful conduct.  *Id.* § 504.  Alternatively, the law permits Plaintiff to recover statutory damages.  *Id.* § 504(c).

99.     Because of DrTuber's willful infringement, the law permits enhancement of the allowable statutory damages.  *Id.* § 504(c)(2).

100.     The law permits Plaintiff injunctive relief.  *Id.* § 502.  Further, the law permits a Court Order impounding any and all infringing materials and instrumentalities.  *Id.* § 503.

101.     Plaintiff has no adequate remedy at law for Defendants' wrongful conduct, as follows:

    a.   Plaintiff's copyrights are unique and valuable property having no readily determinable market value;

    b.   DrTuber's infringement harms Plaintiff's business reputation and goodwill such that Plaintiff could not be made whole by any monetary award; and

    c.   Defendants' wrongful conduct and damages to Plaintiff are continuing and unremitting.

102.     Plaintiff is entitled to preliminary and permanent injunctive relief prohibiting further infringement of Plaintiff's copyrights.  17 U.S.C. § 502.

<u>Count II</u>

<u>Contributory Copyright Infringement</u>

103.     Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

104.     On information and belief, Defendants have engaged in the business of knowingly inducing, causing, and/or materially contributing to unauthorized reproduction, adaptation,

public display and/or distribution of copies of the Plaintiff's copyrighted works, and thus to the direct infringement of Plaintiff's copyrighted works.

105.    On information and belief, Defendants' actions constitute contributory infringement of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501

106.    Defendants' unauthorized publication of Plaintiff's copyrighted works constitutes infringement of Plaintiff's rights in and to each of the copyrighted works and each publication constitutes a separate and distinct infringement.

107.    By enabling, causing, facilitating, materially contributing to, and encouraging the unauthorized publication and reproduction, distribution, and public display of unauthorized copying of Plaintiff's copyrighted works in the manner described above, with full knowledge of the illegality of such conduct, Defendants have contributed to and induced a vast number of copyright and trademark infringements against Plaintiff.

108.    The unauthorized reproduction, distribution, and public display of Plaintiff's copyrighted works that Defendants enable, cause, materially contribute to and encourage through the acts described above are without Plaintiff's consent and are not otherwise permissible under the Copyright Act.

109.    The acts of infringement by Defendants have been willful, intentional, purposeful and in reckless disregard of and with indifference to Plaintiff's rights.

110.     As a direct and proximate result of the infringements by Defendants of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works, Plaintiff is entitled to its actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b)

111.     Alternatively, Plaintiff is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c)

112.     Plaintiff is further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505

## COUNT III

### Vicarious Copyright Infringement

113.     Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

114.     On information and belief, Defendants have engaged in the business of profiting through advertising around Plaintiff's copyrighted works on its website, thus knowingly and vicariously causing and benefiting from the unauthorized reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works, and thus to the vicarious infringement of Plaintiff's copyrighted works.

115.     On information and belief, Defendants' actions constitute vicarious infringement of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501

116.     The infringement of Plaintiff's rights in and to each of the Plaintiff's copyrighted works constituted a separate and distinct infringement.

117.     The acts of infringement by Defendants have been willful, intentional, purposeful and in reckless disregard of and with indifference to Plaintiff's rights.

118.     As a direct and proximate result of the infringements by Defendants of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works, Plaintiff is entitled to its actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b)

119.     Alternatively, Plaintiff is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c)

120.     Plaintiff is further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505

## COUNT IV

## Inducement of Copyright Infringement

121.     Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

122.     On information and belief, Defendants have encouraged the illegal uploading and downloading of Plaintiff's copyrighted works by compensating uploaders, thus inducing the unauthorized reproduction, adaptation, public display and/or distribution of copies of the Plaintiff's copyrighted works, and thus to the direct infringement of Plaintiff's copyrighted works.

123.    Upon information and belief, Defendants pay third parties to send traffic to Defendants' website, knowing the website gains monetary benefit from unauthorized copyrighted works, thus inducing copyright infringement and illegally benefiting Defendants and third parties from such infringement.

124.    On information and belief, Defendants' actions constitute inducing copyright infringement of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

125.    The infringement of Plaintiff's rights in and to each of the Plaintiff's copyrighted works constituted a separate and distinct infringement.

126.    The acts of infringement by Defendants have been willful, intentional, purposeful and in reckless disregard of and with indifference to Plaintiff's rights.

127.    As a direct and proximate result of the infringements by Defendants of Plaintiff's copyrights and exclusive rights under copyright in the Plaintiff's copyrighted works, Plaintiff is entitled to its actual damages and Defendants' profits pursuant to 17 U.S.C. § 504(b).

128.    Alternatively, Plaintiff is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000 with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

129.    Plaintiff is further entitled to their attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

<u>COUNT V</u>

<u>False Designation of Origin under the Lanham Act</u>

130.   Plaintiff repeats, re-alleges, and incorporates by reference each and every preceding allegation set forth herein.

131.   Upon information and belief, Defendants' conduct is likely to cause confusion, mistake or deception as to Defendants' affiliations, connection, or association with Plaintiff, or as to the origin, sponsorship or approval of their goods or commercial activities.

132.   Defendants' conduct as alleged herein, including but not necessarily limited to their use of Plaintiff's marks, constitutes false designation of origin pursuant to 15 U.S.C. § 1125(a).

133.   Plaintiff has been damaged by these acts in an amount to be proven at trial. Plaintiff is also entitled under the Lanham Act to injunctive and equitable relief against Defendants.

## PRAYER FOR RELIEF

A.     That Defendants, their agents, servants, officers, directors, employees, attorneys, privies, representatives, successors and assigns and parent and subsidiary corporations or other related entities, and any or all persons in act of concert or participation with any of them, be preliminarily and permanently enjoined from:

(1)     Any further use of Plaintiff trade dress and terms which is confusingly similar thereto;

(2)     Directly or indirectly using Plaintiff trade dress and terms or confusingly similar trade dress and terms, either alone or in combination with other terms, marks, symbols or trade dress;

(3)     Any further use of Plaintiff trade dress or terms, or any element thereof, in connection with the marketing or sale of adult entertainment;

(4)     Performing any action or using any trade dress, terms, or other name, mark, symbol, imagery or slogan which is likely to cause confusion or mistake, or to deceive or otherwise mislead the trade and/or public into believing that Plaintiff and Defendants are one and the same, or in some way connected, or that Plaintiff is the sponsor of Defendants or their products, or the Defendants in some manner are affiliated or associated with, or under the supervision of Plaintiff, or that Defendants' products originate with Plaintiff, or are connected or offered with the approval, consent, authorization, or under the supervision of Plaintiff;

(5)     Marketing or selling any product containing or utilizing Plaintiff' intellectual property or business values; or

(6)     Any other conduct constituting unfair competition with Plaintiff, misappropriation of Plaintiff trade dress or terms or business values, or a violation of the Florida Code.

B.     That Defendants be ordered to transfer the domain www.DrTuber.com, and all similar domains held by Defendants found in discovery, such as misspellings of the enumerated domains, domains held by Defendants linked to DrTuber.com, and the content therein to Plaintiff.

C.    That Defendants be ordered to file with the Court and serve upon Plaintiff, within thirty (30) days after the entry of an injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with any ordered injunction;

D.    That Plaintiff be awarded damages in an amount to be determined at trial all infringing activities, including Plaintiff's damages and lost profits, Defendants' profits, plus any costs incurred in preventing future confusion, mistake or deception, all from the date of first infringement;

E.    That Defendants pay Plaintiff a sum sufficient to cover the cost of corrective advertising necessary to alleviate any existing or lingering confusion resulting from Defendants' unauthorized use of Plaintiff trade dress and terms;

F.    That Defendants be ordered to account to Plaintiff for all profits, gains and advantages which they have realized as a consequence of their unauthorized use of Plaintiff trade dress and terms, as well as any confusingly similar trade dress or terms;

G.    That Plaintiff be awarded enhanced damages and attorney's fees;

H.    That Plaintiff be awarded pre-judgment and post-judgment interest;

I.    That Plaintiff be awarded costs and expenses incurred in prosecuting this action, including expert witness fees; and

J.    That such other and further preliminary and permanent relief be awarded to Plaintiff as the Court deems appropriate.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby respectfully demands a jury trial as provided by Rule 38(a) of the Federal

Rules of Civil Procedure.

DATED:  May 16, 2012                     Respectfully submitted,

                                         By:

                                         RANDAZZA LEGAL GROUP
                                         2 S. Biscayne Blvd, Suite 2600
                                         Miami, FL 33131
                                         Telephone (888) 667-1113
                                         Facsimile: (305) 397-2772

                                          */s/ Jason A. Fisher*
                                         Marc J. Randazza
                                         mjr@randazza.com
                                         Jason A. Fisher (68762)
                                         jaf@randazza.com

                                         Chad Belville, Attorney at Law
                                         *Pro Hac Vice*
                                         4742 North 24th Street, Suite 315
                                         Phoenix, AZ 85016

                                         MAILING ADDRESS:
                                         P.O. Box 17879
                                         Phoenix, AZ 85011

                                         Telephone:  602-904-5485
                                         FAX:  602-297-6953
                                         E-mail cbelville@azbar.org

                                         ATTORNEYS FOR PLAINTIFF

# TABLE OF ATTACHMENTS

1.    Compete Results for DrTuber

2.    Alexa Ranking for DrTuber

3.    WhoIs DrTuber March 2012

4.    Partner Content Program

      a.   Privacy Policy

      b.   Sign Up

      c.   Features

      d.   Home

5.    DrTuber Premium

      a.   Premium DMCA Page March 26 2012 with no DMCA agent listed

      b.   Premium Privacy Policy

      c.   Premium Sign Up Page March 26 2012

      d.   Premium Terms and Conditions

6.    Privacy Policy March 26 2012

7.    Terms of Use March 26 2012

8.    Webmaster Program 2257 Statement

      a.   Webmaster Program Affiliate Privacy Policy

      b.   Webmaster Program Affiliate Terms and Conditions

      c.   Webmaster Program Contact Us

      d.   Webmaster Program DMCA Page

      e.   Webmaster Program FAQ March 26 2012

      f.   Webmaster Program Features March 26 2012

      g.   Webmaster Program Home

h.  Webmaster Program Sign Up

9.      DrTuber Join Form March 2012

10.     SegPay Contact Page (DrTuber Payment processor)

11.     DrTuber Static Pages

a.  2257 Statement

b.  DrTuber Advertise Page

c.  DrTuber Community Page

d.  DrTuber DMCA March 26 2012

e.  DrTuber Feedback Form

f.  DrTuber Member Sign up Page